[Cite as *State v. Buford*, 2018-Ohio-2977.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                Court of Appeals No. L-17-1018

       Appellee                                       Trial Court No. CR0201502471

v.

Donald Buford                                          **DECISION AND JUDGMENT**

       Appellant                                      Decided:  July 27, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Adam H. Houser, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Donald Buford, appeals the January 3, 2017 judgment of the

Lucas County Court of Common Pleas, where he was convicted of carrying a concealed

weapon in violation of R.C. 2923.12(A)(2) and (F), a felony of the fourth degree.

Finding no error, we affirm.

## Background

{¶ 2} On May 23, 2015, appellant was sitting on the passenger side of a vehicle parked in the middle of a one-way residential street. It was 3:00 a.m., and the vehicle was spotted by patrol officers.

{¶ 3} The officers' patrol car approached behind the stationary vehicle. The officers entered the vehicle's license plate information and initiated their signal lights. Appellant fled from the vehicle and led the officers on a foot chase. Officer Patrick Fischer followed and, at one point, appellant disposed of a gun. Officer Fischer heard the gun hit the ground.

{¶ 4} After catching and apprehending appellant, the officer returned to the area the gun was thrown and retrieved it.

{¶ 5} On September 2, 2015, appellant was indicted for carrying a concealed weapon in violation R.C. 2923.12(A)(2) and (F), a felony of the fourth degree, and having a weapon under disability in violation R.C. 2923.13(A)(3), a felony of the third degree.

{¶ 6} Appellant moved to suppress the weapon based on the initial approach and subsequent pursuit, arguing a violation of his rights occurred. A suppression hearing took place on November 25, 2015. Officer Fischer testified to his personal observations on the night appellant was arrested. The trial court denied the motion to suppress in open court.

{¶ 7} On November 30, 2015, appellant entered a no-contest plea to having a weapon under disability, and the court accepted the plea and found appellant guilty. Sentencing was set for December 7, 2015, but appellant failed to appear and a warrant was issued for his arrest. Appellant was re-arrested, and subsequently requested the trial court withdraw his plea. After numerous continuances, appellant's motion to withdraw his plea was granted on November 7, 2016.

{¶ 8} On December 28, 2016, appellant pled no-contest to carrying a concealed weapon. Appellee dismissed the weapon-under-disability charge. The parties entered into an agreed-on sentence, and the court accepted the plea. The court found appellant guilty and sentenced him as the parties agreed, which was five years of community control. Appellant was subject to a reserved prison term of 17 months, which was to be served consecutively to another 22-month reserved term from another case, in the event he violated community control. The entry was journalized on January 3, 2017, and it is from this judgment appellant timely appeals.

*Anders* **Brief**

{¶ 9} On April 27, 2018, appellant's counsel filed a request to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel asserted that, after thoroughly reviewing the transcripts of the proceedings in the trial court and the applicable case law, no meritorious assignments of error could be presented. Counsel did submit the following three potential assignments of error:

3.

1. The trial court may have erred by failing to inform appellant that, by entering into an agreed upon sentence, he would waive his right to appeal.

2. The trial court may have erred by failing to grant appellant's motion to suppress evidence.

3. The trial court may have erred by failing to comply with Crim.R. 11 in accepting appellant's plea.

{¶ 10} The state also filed an *Anders* brief, concurring with the conclusion of appellant's counsel that there was no arguable basis for a valid assignment of error and urging this court to permit counsel to withdraw. Appellant did not file a pro se brief.

{¶ 11} The procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue is set forth in *Anders*, as well as *State v. Duncan*, 57 Ohio App.2d 93, 385 N.E.2d 323 (8th Dist.1978).

{¶ 12} In *Anders*, the U.S. Supreme Court found if counsel, after a conscientious examination of the case, determines it to be wholly frivolous, counsel should so advise the court and request permission to withdraw. *Anders* at 744. This request must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.* In addition, counsel must furnish the client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters the client so chooses. *Id.* Once the requirements are fulfilled, the appellate court must conduct a full examination of the proceedings and decide if the appeal is indeed frivolous. *Id.* If the

4.

appellate court determines the argument is frivolous, it may grant counsel's request to withdraw and dismiss the appeal or it may proceed to a decision on the merits. *Id*.

{¶ 13} We note that on June 29, 2018, *State v. Wenner*, 6th Dist. Sandusky No. S-18-4, 2018-Ohio-2590 was released, in which this court stated that it will no longer accept *Anders* briefs in criminal appeals. Nevertheless, because this case was filed pre-*Wenner*, we proceed with the process and role customarily undertaken pursuant to *Anders*.

{¶ 14} In this case, appellant's counsel has satisfied the requirements of *Anders*, and has set forth three potential assignments of error. Accordingly we address the potential assignments of error put forth by counsel, and then follow with our examination of the entire record.

**Potential Assignment of Error No. 1**

{¶ 15} Counsel first argues the trial court may have erred by not informing appellant that an agreed-on sentence pursuant to R.C. 2953.08 waives his right to appeal.

{¶ 16} Crim.R. 32(B)(2) states that "[a]fter imposing sentence in a serious offense, the court shall advise the defendant of the defendant's right, where applicable, to appeal or to seek leave to appeal the sentence imposed."

{¶ 17} R.C. 2953.08(D)(1) states that "[a] sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."

5.

**{¶ 18}** Here, appellant argues he was neither notified nor aware that he was waiving his right to appeal the agreed-to sentence. However, the record reflects that at the December 28, 2016 hearing, where the court accepted the plea and imposed the agreed-to sentence, the following exchange occurred:

THE COURT: Do you understand that while you're giving up many rights you have the right of appeal. So you would have— actually you don't. I'm sorry. You're asking me to accept an agreed upon sentence. That agreed upon sentence is to place you on community control in the new case. Okay. * * * Do you understand all that?

[APPELLANT]: Yes, sir.

THE COURT: You're giving up the right of appeal by being placed on community control through an agreed upon sentence. Do you understand that?

[APPELLANT]: Yes.

THE COURT: That's the quid pro quo in the bargain. You know you don't have to face prison in the new case. In exchange for that, you also are waiving your right to appeal. Do you understand that?

[APPELLANT]: Can I have a second with my attorney?

THE COURT: Sure.

[APPELLANT]: Thank you, Judge.

6.

THE COURT: You have— so the question pending before you is you understand you're waiving your right of appeal?

[APPELLANT]: Yes.

THE COURT: That's what you want to do?

[APPELLANT]: Yes.

{¶ 19} Based on this interaction between the court and appellant, we are satisfied appellant was properly notified that he was waiving his right to appeal by agreeing to a community control sanction. Accordingly, the first potential assignment of error is not well-taken.

**Potential Assignment of Error No. 2**

{¶ 20} Counsel next argues the trial court may have erred by improperly denying appellant's motion to suppress where the arresting officer stopped and pursued appellant without reasonable, articulable suspicion.

{¶ 21} "Appellate review of a motion to suppress presents mixed questions of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact." *State v. Steed*, 2016-Ohio-8088, 75 N.E.3d 816, ¶ 11 (6th Dist.), citing *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. "The appellate court must accept the trial court's findings of fact, as long as the facts are supported by competent, credible evidence." *Id.*, citing *Roberts*. "The appellate court applies a de novo standard of review to determine whether the facts satisfy the applicable legal

7.

standard." *Id*., citing *State v. Bragg,* 6th Dist. Lucas No. L-07-1162, 2007-Ohio-5993, ¶ 4.

{¶ 22} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *Id*. at ¶ 27, citing *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. "When a police officer stops a vehicle and detains its occupants, a seizure within the meaning of those provisions has occurred." *Id*., citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "Accordingly, to effectuate a traffic stop, an officer must have probable cause to believe the driver is violating a traffic or equipment regulation or there is articulable and reasonable suspicion that the vehicle or its occupant is subject to seizure for violating the law." *Id*., citing *Prouse* at 661, 663.

{¶ 23} In this case, counsel seemingly challenges the stop and subsequent chase of appellant as unconstitutional. Specifically, appellant must argue that his rights were violated before the gun was found in his possession by the police.

{¶ 24} At the motion to suppress hearing, Officer Patrick Fischer testified about the events as follows:

[OFFICER]: Me and my partner were driving by, my partner spotted a car on Eastern sitting in the middle of the street with its lights on running. We pulled around Western, came up in the alley to come behind it on Eastern to make a traffic stop.

[APPELLEE]: Okay. And why did you initiate the traffic stop?

8.

[OFFICER]: It was late at night and the car was sitting in the middle of the street blocking.

[APPELLEE]: And is that a traffic violation?

[OFFICER]: It is.

[APPELLEE]: And do you remember approximately? – you say it's late at night. Around what time?

[OFFICER]: I believe it was around three or so in the morning.

[APPELLEE]: Okay. What happened when you attempted to initiate the traffic stop?

[OFFICER]: As I was starting to punch the plate in our computer, my partner initiated the lights. As soon as he did, I heard him yell he's running. I looked up, see an individual running from the passenger side of the vehicle.

[APPELLEE]: Okay. And when the passenger left the vehicle, what did you do?

[OFFICER]: I immediately exited my vehicle, yelled police, told him to stop, and gave chase.

[APPELLEE]: Were you in uniform?

[OFFICER]: I was.

[APPELLEE]: Okay. And were you able to apprehend the passenger?

[OFFICER]: Eventually I was, yes.

[APPELLEE]: Okay. And during the flight did anything occur?

[OFFICER]: Yes. Ran behind the first house off of Eastern heading toward Western southbound. The defendant jumped over a fence. I jumped over after him. He was clearing another fence, and as I ran up to that fence, I noticed that the entire time that I was chasing him he had been holding his right side, and as I popped up over the fence, I seen him toss what appeared to be a pistol. Heard a metal hit on concrete. * * *

[APPELLEE]: Okay. And after you apprehended him, were you able to locate what you saw him throw?

[OFFICER]: Yes, we did.

[APPELLEE]: And what was that?

[OFFICER]: A pistol. Handgun.

{¶ 25} Based on this testimony, we find there is competent, credible evidence appellant was lawfully subject to being questioned where he sat in an idle car, in the middle of a roadway, suspiciously at 3:00 a.m., and then decided to flee and lead officers on a chase. Furthermore, appellant's disposing of the weapon while being chased results in this court finding the weapon was in plain view while officers were lawfully in pursuit of appellant.

{¶ 26} For these reasons, we find no merit to the second potential assigned error.

**Potential Assignment of Error No. 3**

{¶ 27} Finally, counsel argues that the trial court may have failed to comply with Crim.R. 11 when miscalculating the total reserve time imposed on appellant.

{¶ 28} We note appellant did not object, challenge or seek to withdraw his December 28, 2016 plea prior to being sentenced.  Therefore, appellant must rely on the plain error analysis to now challenge his sentence or plea.  *See*, *e.g.*, *State v. Toyloy*, 10th Dist. Franklin No. 14AP-463, 2015-Ohio-1618, ¶ 19.

{¶ 29} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  To affect a substantial right, the error must be outcome-determinative.  *See State v. Amos*, 140 Ohio St.3d 238, 2014-Ohio-3160, 17 N.E.3d 528, ¶ 21-23.

{¶ 30} Here, appellant specifically argues that the trial court may have erred by failing to comply with Crim.R. 11 in accepting appellant's plea "when the court stated that Appellant had 38 months suspended sentence when Appellant actually had 39 months of suspended sentence remaining in violation of his community control."

{¶ 31} The plea and sentencing hearing transcript reflects as such:

> THE COURT:  Well, here's what we're going to do.  I'm going to—the original sentence is resuspended.  I'm adding an additional year.  You were originally placed on community control for four years.  I'm adding a fifth year.  So now you're going to be on community control for five years for each case.  The only additional term on that case— so all those other

11.

terms that were previously imposed remain in effect except for this. No further violation.

[APPELLANT]: Yes, sir.

THE COURT: If you violate for any reason, reserve sentence in that case, which is 11 months for each of the 2 counts, consecutive to each other, will be imposed. It also triggers a violation of the new case for which the 17 months reserve sentence is also consecutive to 2012 case. Okay.

[APPELLANT]: Yes, sir.

THE COURT: So that means you have 22 months of reserve time hanging over in the 2012 case, and 17 months, 38 months is the period of time that's hanging over your head in these two cases. You understand?

[APPELLANT]: Yes, sir.

{¶ 32} We acknowledge there was a clear miscalculation because 22 months plus 17 months equals 39 months, not 38 months. Nevertheless, we find the above exchange between the court and appellant occurred after appellant's plea was entered into and accepted by the court. Therefore, the timing of this miscalculation contradicts the idea that appellant's intent, knowledge or judgment relating to entering into his plea agreement was clouded by the lesser reserved time. Frankly, we find this error could not have caused any prejudice to appellant with respect to his plea. We will review the plea.

12.

**{¶ 33}** A plea in a criminal case must be made knowingly, intelligently, and voluntarily. *See State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 7.

**{¶ 34}** Crim.R. 11(C) requires an oral dialogue between the trial court and defendant which enables the court to determine fully that the defendant is understanding his rights and the consequences of his plea of guilty or no contest. *See State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8; *State v. Caudill*, 48 Ohio St.2d 342, 358 N.E.2d 601 (1976), paragraph two of syllabus.

**{¶ 35}** With respect to the required colloquy, Crim.R. 11(C)(2) provides:

In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant

understands that by the plea the defendant is waiving the rights to jury trial,

to confront witnesses against him or her, to have compulsory process for

obtaining witnesses in the defendant's favor, and to require the state to

prove the defendant's guilt beyond a reasonable doubt at a trial at which the

defendant cannot be compelled to testify against himself or herself.

*See* Crim.R. 11(C)(2)(a)-(c). *Accord Veney* at ¶ 8-13.

{¶ 36} "Before accepting a guilty or no-contest plea, the court must make the

determinations and give the warnings required by Crim. R. 11(C)(2)(a) and (b) and notify

the defendant of the constitutional rights listed in Crim.R. 11(C)(2)(c)." *Id.* at ¶ 13.

{¶ 37} The record in this case demonstrates counsel and the court advised

appellant of a potential prison term of 6 to 18 months, a potential fine, and a potential

imposition of a community control sanction. Appellant was advised of constitutional

rights, including right to jury trial, to confront witnesses, to have compulsory process, to

no self-incrimination, and to require proof of the crime beyond a reasonable doubt.

Appellant entered the plea on his own free will and choice, with guarantee of no promises

or threats.

{¶ 38} In sum, we find the trial court fully complied with Crim.R. 11, and that

appellant was not precluded from entering a knowing, intelligent, and voluntary plea.

The third and final potential assignment of error is not well-taken.

14.

**Our Examination**

{¶ 39} Last is our examination of the record to determine whether this appeal is indeed frivolous. *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. Review of the record does not reveal any errors by the trial court which would justify a reversal of the judgment. We find this appeal to be meritless, and counsel's request to withdraw is granted.

**Conclusion**

{¶ 40} The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

James D. Jensen, J. _____

_____
Christine E. Mayle, P.J. _____ JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.